**AMOCO PIPELINE COMPANY, a
corporation, Plaintiff-Appellee,**

v.

**ADMIRAL CRUDE OIL CORPORATION
et al., Defendants-Appellees,**

v.

**TULSA CRUDE OIL PURCHASING
COMPANY, Defendant-Appellant.**

No. 73–1206.

United States Court of Appeals,
Tenth Circuit.

Jan. 8, 1974.

Irvine E. Ungerman, of Ungerman, Grabel & Ungerman, Tulsa, Okl. (James O. Ellison, of Boone, Ellison & Smith, Tulsa, Okl. and David F. Boyd, Jr., Albuquerque, N.M., with him on the brief), for appellant.

Harold L. Hensley, Jr., of Hinkle, Bondurant, Cox & Eaton, and Roger L. Copple, of Jennings, Christy & Copple, Roswell, N.M. (Wm. B. Browder, Jr., Robert C. Bledsoe, and Stubbeman, McRae, Sealy, Laughlin & Browder,

Midland, Tex., with them on the brief), for appellees.

Before MURRAH, SETH and DOYLE, Circuit Judges.

SETH, Circuit Judge.

The plaintiff-appellee, Amoco Pipeline Company, a common carrier of crude oil, filed an interpleader suit in the United States District Court for the District of New Mexico under 28 U.S.C. § 1335. The defendants included Tulsa Crude Oil Purchasing Company and its subsidiary, Admiral Crude Oil Corporation. Involuntary petitions in bankruptcy had been filed in Oklahoma and in Texas against both corporations, and their respective trustees were named as defendants. Admiral Crude Oil Corporation had been purchasing crude oil in New Mexico from the producer parties to the interpleader, and it was being transported to Admiral by Amoco under its regular tariffs.

The plaintiff carrier tendered into the New Mexico court proceeds from the sale of crude oil, and also crude oil in storage which had been received from the producers for transportation to Admiral as the purchaser. The plaintiff asked that the defendants be required to assert their several claims thereto; furthermore the plaintiff was asserting a lien thereon for transportation and demurrage charges.

The trustee for Tulsa Crude appeared in the New Mexico court and asked that the interpleader proceedings be stayed for the reason that the reorganization court in Oklahoma had previously issued an order that litigation involving Tulsa Crude or its assets be enjoined and restrained. The New Mexico court denied the stay, decided the merits, and rendered a judgment adverse to the position advanced by the trustee. This appeal was then taken.

The issues on appeal relate to the jurisdiction of the interpleader court in New Mexico as against the jurisdiction of the Oklahoma reorganization court as advanced by the trustee. These issues

in turn concern New Mexico law governing possession of, and title to, the crude being transported.

Prior to February 1, 1972, the oil producers delivered crude oil to Amoco for transmission to Admiral. From November 1971 through January 1972, Admiral did not pay Amoco its regular, published charges for the gathering, transporting, and storing of crude oil. Amoco therefore asserted a claim of lien against 49,953.98 barrels of crude oil which it had received from the producing defendants and which were in Amoco's possession in its storage facilities in Lea County, New Mexico. Admiral was given notice of this fact.

On February 10, 1972, Amoco tendered the crude oil to Admiral conditioned on payment of its lien claim; Admiral refused to pay the lien claim and refused to accept the oil, which remained thereafter in Amoco's Lea County, New Mexico, storage facilities.

On February 16, 1972, Tulsa Crude was adjudicated bankrupt in the Oklahoma court, and on March 7th, the court accepted the corporation for reorganization under Chapter X and entered the usual injunctive order against actions against the corporation or its property. On February 23, 1972, Admiral was adjudicated a bankrupt in the Northern District of Texas and later (September 21st) the court transferred the proceedings to the Oklahoma court where the proceedings concerning the parent corporation, Tulsa Crude, were pending.

Prior to February 10, 1972, the oil producers discovered that Amoco had received oil from them for Admiral when Admiral was insolvent; the checks which had been tendered to the oil producers by Admiral in payment for oil sold to it in December 1971 were dishonored by the drawee bank and returned marked "insufficient funds." The oil producers therefore notified Amoco and other interested parties to stop delivery of crude oil to or for the benefit or account of Admiral, thus exercising a right of stoppage *in transitu* and recla-

mation. Amoco notified the producers that it would enforce its lien against the oil in its possession as Admiral had refused to pay the lien claim and accept delivery of the oil.

Amoco thereafter sold 13,000 barrels of crude oil which it had in its possession on March 15, 1972, to satisfy its common carrier lien against Admiral of $39,564.52, and continued to assert a lien against the balance of the proceeds of sale and 36,953.98 barrels in storage for unpaid demurrage and storage charges against Admiral.

The New Mexico court found that at all material times the crude oil, or the proceeds from its sale, was in the sole and exclusive possession of Amoco, the carrier, or in the registry of the court. This finding is supported by the record.

■ The jurisdiction of the reorganization court arises from jurisdiction over the debtor, and its property. 11 U.S.C. §§ 511–516.

■ On the other hand, the New Mexico court had "jurisdiction to decide whether the case [is] properly before it," United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 166, 51 L.Ed. 319 (1906); United States v. Mine Workers, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In the case at bar, the New Mexico district court necessarily had to consider the merits of at least one portion of the case before it. It had to decide who had possession, and who had title, to the oil in issue, in order to ascertain if it had jurisdiction of the case and whether it should stay its proceedings. Thus as often happens, a determination of jurisdiction necessarily also decides a substantive issue. See Buss v. Long Island Storage Warehouse Co., 64 F.2d 338, 339 (2d Cir.).

■ As decided by the district court, the sale of the crude oil by the producers was a sale of goods, N.M. Stat.Ann.1953, § 50A–2–105(1) (Repl. 1962), and was thus governed by Article 2 of the Uniform Commercial Code, N. M.Stat.Ann.1953, §§ 50A–2–101 to 50A–2–725 (Repl.1962, Supp.1973); N.M.

Stat.Ann.1953, § 50A–2–102 (Repl.1962). If the Uniform Commercial Code is applied, Admiral, when it refused on February 10, 1972, to accept the tender of the crude oil from Amoco conditioned upon payment by Admiral of Amoco's common carrier lien, caused thereby title to the oil to revest, if indeed it ever passed to Admiral, in the oil producing sellers. Section 2–401(4). Similarly, upon the notice given by the sellers to Amoco, prior to February 10, 1972, to stop delivery of the crude oil to Admiral based upon the previous dishonoring by the drawee bank of Admiral's "insufficient funds" checks to the sellers, the sellers thereby timely exercised their rights of stoppage *in transitu* under sections 2–702 and 2–705. Thus, regardless of whether title ever passed to Admiral (section 2–401; Evans Products Co. v. Jorgensen, 245 Or. 362, 421 P.2d 978, 980), or whether it had a special property interest in the oil, section 2–501, the sellers could reclaim the oil upon demand and notice to Amoco as given herein. Sections 2–702(1), (2) and 2–705(1). This was effective for several reasons. The trial court found, and it is borne out by the record that the tender of the "insufficient funds" checks constituted a written misrepresentation of solvency. Theo. Hamm Brewing Co. v. First Trust & Savings Bank, 103 Ill.App.2d 190, 242 N.E.2d 911. From the record it is clear, as the trial court found, that the oil at all material times was in possession of a third party, the carrier. Thus Admiral never had possession, constructive or otherwise, of the oil and under the above-cited provisions of New Mexico's Uniform Commercial Code even if it could be said to have had constructive possession, it did not so have it after February 10, 1972, when Admiral refused tender of the oil and the sellers exercised their rights of stoppage of delivery *in transitu* and reclaim. The same considerations govern the question of Admiral's "property" or "title" in the oil. The bankruptcy petition was filed, at the earliest, on February 16, 1972, so that upon the date of filing, the title to

the oil was not in Admiral. It was not the "property" of the debtor. The Oklahoma district court's stay order thus could not reach the oil, not in the debtor's possession nor its property. 11 U. S.C. § 511. Likewise the New Mexico district court's exercise of jurisdiction and refusal to stay its proceedings was correct. 28 U.S.C. § 1335. By the same token, so long as Amoco retained possession of the oil or the proceeds, and so long as the proceeds were in the registry of the New Mexico district court, the New Mexico proceeding was not to "enforce a lien upon the *property of the debtor*" under 11 U.S.C. § 516(4).

Accordingly, the judgment of the district court is in all respects affirmed.